# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JAMES SLADE,

    Defendant.

Case No. 3:14-cr-00103-05-SLG-DMS

## ORDER RE MOTIONS IN LIMINE

    Before the Court are three motions in limine. At Docket 93 is Defendant James Slade's Motion in Limine to Exclude Evidence of Mr. Slade's Prior Uncharged Business Activities. At Docket 94 is Mr. Slade's Motion in Limine to Exclude Statements of Unavailable Codefendants and Alleged Co-Conspirators. At Docket 109 is the Government's Motion in Limine to Exclude Evidence of an Absence of Environmental Harm, Jury Nullification, and Ignorance of the Law. The motions have been fully briefed. Oral argument was not requested and is not necessary to the Court's decisions. Mr. Slade is charged with four counts of permit violations under the Clean Water Act, a related conspiracy count, and one count of submitting a false report under the Clean Water Act.[1] A jury trial is scheduled to begin on September 21, 2015.

---

[1] Docket 17 (Superseding Indictment).

# DISCUSSION

## I. Mr. Slade's Motion at Docket 93

Mr. Slade seeks to preclude the Government from introducing evidence pertaining to Mr. Slade's prior mining activity at the Liberty Creek Mine in Washington State from approximately 2004 to 2008. Mr. Slade asserts that

> [a]n individual with knowledge of the Liberty Creek Mine provided agents with information in an audio recorded interview about a permit violation citation that the individual (not Mr. Slade) received and blamed that violation on Mr. Slade's activities. The individual explained that he and Mr. Slade were adverse parties in litigation, speculated about Mr. Slade's business dealings, and insinuated that Mr. Slade mishandled funds.[2]

Mr. Slade indicates that he is unaware of the specific facts the Government intends to introduce, but asserts that "evidence pertaining to Liberty Creek Mine" is irrelevant. And even if relevant, Mr. Slade maintains that (a) to the extent the Government contends the evidence is admissible under an exception to Evidence Rule 404(b)(2), Mr. Slade should be provided an opportunity to respond, and (b) even if the evidence the Government intends to introduce falls within an exception to Rule 404(b)(2), it should be excluded under Rule 403 because "its probative value would be substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time" because Mr. Slade's activities in Washington predate those at issue in this case and because "at least some of the government's information comes from a person who was involved in a civil lawsuit against Mr. Slade."[3]

---

[2] Docket 93 (Mot.) at 2.

[3] Docket 93 (Mot.) at 3 (citing Fed. R. Evid. 403).

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 2 of 12

The Government responds that it "intends to introduce evidence of Mr. Slade's prior experience owning and operating alluvial mining companies, and of the specialized mining system he developed, and which XSP [XS Platinum, Inc.] later hired him to implement at the Platinum Creek Mine in Alaska."[4] The Government contends that this evidence is "inextricably intertwined with the government's case."[5] But the Government also indicates that it "does not intend to introduce evidence of permit violations or business disputes with past partners."[6] As such, the Government maintains that it "does not seek to introduce prior criminal acts, or even bad acts, but rather only the evidence necessary to tell a clear and coherent story of the defendant's developing the AuVert system, using it and discovering its shortcomings with Liberty, being recruited at XSP to implement the system, and knowingly re-implementing it incompletely at Platinum Creek Mine."[7]

The Government also asserts that to the extent the Court finds the evidence is not inextricably intertwined with the charges against Mr. Slade, it is "nonetheless admissible to show [Mr. Slade's] knowledge, absence of mistake and lack of accident regarding the mining operations at the Platinum Creek Mine and the discharges of turbid wastewater into the Squirrel/Platinum Creek and Salmon River."[8] The Government asserts that

---

[4] Docket 106 (Opp'n) at 1-2.

[5] Docket 106 (Opp'n) at 2.

[6] Docket 106 (Opp'n) at 2. The Government adds, however, that it may seek to introduce such evidence if "the defendant raises these issues or otherwise makes them relevant." *Id.*

[7] Docket 106 (Opp'n) at 5.

[8] Docket 106 (Opp'n) at 2 (citing Evidence Rule 404(b)).

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 3 of 12

The defendant's intimate knowledge of alluvial mining, his development of the mining system being implemented at XSP, and his understanding of the business side of running an alluvial mining company are all direct evidence of his knowledge of the problems at Platinum Creek Mine, and the absence of any mistake or accident with respect to the discharges from Platinum Creek Mine. Evidence of the prior mining operation is critical to demonstrating the defendant's familiarity with and knowledge of the mining system at issue here, and his resulting knowledge that, as implemented at Platinum Creek, that system would result in illegal discharges.[9]

With respect to Evidence Rule 403, the Government emphasizes that it does not intend to introduce evidence of permit violation citations or allegations that Mr. Slade mishandled funds in its case in chief. The Government contends that the evidence it does intend to introduce, of Mr. Slade's mining experience and mining system, is not unfairly prejudicial and "is highly probative of his knowledge of both the fact that discharges were occurring at Platinum Creek, and that the mine was governed by a regulatory regime that would make those discharges illegal."[10] And the Government asserts that evidence of Mr. Slade's prior mining experience "is also essential to explaining why he was hired at XSP."[11]

The Ninth Circuit has held intrinsic evidence "includes evidence that 'is necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"[12] Such evidence "includes circumstantial evidence explaining the general nature of a defendant's business activity and providing a context in which the

---

[9] Docket 106 (Opp'n) at 6-7.

[10] Docket 106 (Opp'n) at 10.

[11] Docket 106 (Opp'n) at 10.

[12] *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (internal citations omitted).

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 4 of 12

transactions at issue took place."[13]  In *United States v. Anderson*, the defendant argued that the Government's copyright infringement case was complete without the evidence of other similar copyright violations.  But the Ninth Circuit held that the evidence "help[ed] explain Anderson's business operations, including his manufacturing process."[14]  The Ninth Circuit reasoned that "the larger and more sophisticated [Anderson's] operation was, the more likely it was that he knew what he was doing was illegal."[15]

Here, the Court finds that the evidence the Government seeks to present in connection with Mr. Slade's work at Liberty Creek Mine provides context for the activities at issue in this case, including Mr. Slade's mining company experience, his development and use of the mining system used at XSP, and the significance of some of his alleged actions at XSP.  Accordingly, it is admissible intrinsic evidence.[16]  Moreover, the Court finds that the evidence is not unfairly prejudicial under Rule 403.[17]  However, the Court will grant the Defendant's motion to exclude evidence as to any prior permit violations and as to Mr. Slade's prior business disputes, unless and until the Court orders otherwise on motion of the Government made outside of the presence of the jury.

---

[13] 741 F.3d at 949-50.

[14] 741 F.3d at 951.

[15] 741 F.3d at 951.

[16] The Court also finds that the proffered evidence would be admissible under Evidence Rule 404(b) to demonstrate Mr. Slade's knowledge of mining and absence of mistake.

[17] *See* Docket 93 (Mot.) at 2.

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 5 of 12

## II. Mr. Slade's Motion at Docket 94

Mr. Slade asks the Court to exclude any out of court statements made by his codefendants or any alleged co-conspirators who do not testify at trial. "In particular, the defense is aware of an audio recorded interview of Mr. [James] Staeheli by federal agents and interviews of and a factual proffer made by Mr. [Robert] Pate in connection with his guilty plea. The defense also understands that the government interviewed Richard Webber . . . ."[18] Mr. Slade bases this motion on the Confrontation Clause of the U.S. Constitution and U.S. Supreme Court precedent that he reads to prohibit the introduction of statements by a non-testifying co-defendant that incriminates another defendant at a joint trial and bars testimonial statements of unavailable witnesses whom the defendant did not have an opportunity to cross-examine.[19]

The Government responds that it intends to introduce written and oral co-conspirator statements.[20] The Government contends that (a) the statements are not hearsay if they are statements offered against a party and made by co-conspirators during the course and in furtherance of the conspiracy pursuant to Evidence Rule 801(d)(2)(E);[21] (b) Mr. Slade's reliance on *Bruton v. United States* is misplaced because Mr. Slade will

---

[18] Docket 94 (Mot.) at 3.

[19] Docket 94 (Mot.) at 2 (citing *Bruton v. United States*, 391 U.S. 123 (1968)).

[20] Docket 105 (Opp'n) at 2.

[21] Docket 105 (Opp'n) at 2. The Government "also anticipates offering statements into evidence as non-hearsay statements of a party-opponent under Fed. R. Evid. 801(d)(2) and as business records admissible for the truth of the matter asserted under Fed. R. Evid. 803(5)." *Id.* at 6.

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 6 of 12

not be tried at a joint trial;[22] and (c) none of the statements the Government will seek to admit are "testimonial" under *Crawford v. Washington* and therefore their admission would not violate the Confrontation Clause.[23]

Without being provided the specific statements the Government may attempt to introduce or the evidence of a conspiracy (and, thus, the status of any alleged co-conspirators) that the Government may present, the Court cannot rule on the admissibility of such statements under the exceptions identified by the Government, nor broadly preclude any category of statements as requested by Mr. Slade. Accordingly, Mr. Slade's motion at Docket 94 is denied without prejudice to renew.

### III. The Government's Motion at Docket 109

The Government asks the Court to exclude: "(1) evidence and argument that the Defendant's acts did not result in environmental harm; (2) evidence and argument for jury nullification; and (3) evidence and argument that the Defendant was ignorant of the law and/or did not know the legal requirements of the Clean Water Act."[24] Mr. Slade argues generally that the Government's motion is premature and improperly seeks to exclude "broad categories of evidence that it fails to identify with any particularity."[25]

---

[22] Docket 105 (Opp'n) at 7 (citing 391 U.S. 123 (1968)). However, Mr. Slade's co-defendant James Staeheli is now scheduled to go to trial with Mr. Slade. *See* Docket 135 (Order).

[23] Docket 105 (Opp'n) at 8-9.

[24] Docket 109 (Mot.) at 1.

[25] Docket 118 (Opp'n) at 2.

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 7 of 12

On the first point, Mr. Slade agrees with the Government that environmental harm is irrelevant to the offenses charged.[26] He seeks an order that precludes both parties from "introducing evidence or making arguments about pollutants other than turbidity or any effects that turbidity or any other pollutant might have on the environment."[27] According to Mr. Slade, the Government has represented that it intends "to elicit testimony . . . about the detrimental effects of turbidity on fish and wildlife."[28]

It appears that the parties are substantially in agreement to preclude evidence and argument pertaining to environmental harm. Accordingly, the Government's motion as to this issue will be granted in that both parties will be precluded from introducing evidence or making arguments about pollutants other than turbidity or any effects that turbidity or any other pollutant might have on the environment.

Second, the Government asks the Court to preclude the Defendant from presenting evidence or argument "designed to elicit jury nullification."[29] Here again, Mr. Slade agrees with the Government that arguments that the jury should acquit Mr. Slade even if it determines that he violated the law would be improper. Defendant states that he does not intend to make any such argument.[30] The Government has not specified what evidence the defense might introduce that it seeks to exclude by this motion. Absent specification as to that evidence, the Court declines to grant the in limine motion in that

---

[26] Docket 118 (Opp'n) at 5.

[27] Docket 118 (Opp'n) at 5.

[28] Docket 118 (Opp'n) at 4-5.

[29] Docket 109 (Mot.) at 5.

[30] Docket 118 (Opp'n) at 5-6.

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 8 of 12

regard. Therefore, the Government's motion is granted to the extent that Mr. Slade will not be permitted to argue to the jury that he should be acquitted even if the jury determines that he violated the law. The motion is otherwise denied without prejudice to renew at trial.

Third, the Government asks the Court to preclude Mr. Slade from presenting evidence that he was "ignorant of the law and the facility's permit."[31] The Government asserts that the Clean Water Act is a general intent crime and "a lack of knowledge concerning its legal requirements is irrelevant and should not be admitted in this case."[32]

Mr. Slade does not dispute that "ignorance of the law is not a defense" but asserts that his "knowledge of the permit's conditions and limits is relevant to whether he knowingly discharged in violation of the permit."[33] Four of the Counts against Mr. Slade are charged under 33 U.S.C. § 1319(c)(2). In *United States v. Weitzenhoff*, the Ninth Circuit held that criminal sanctions could be imposed under Section 1319(c)(2) "regardless of whether the polluter is cognizant of the requirements or even the existence of the permit."[34] Therefore, evidence going to Mr. Slade's knowledge of the law or the permit requirements is not relevant to those four counts

Mr. Slade asserts that his knowledge of the permit and its requirements is relevant to "whether he failed to report discharges of water with turbidity levels that exceeded

---

[31] Docket 109 (Mot.) at 8.

[32] Docket 109 (Mot.) at 8 (citing *United States v. Hopkins*, 53 F.3d 533, 537 41 (2d Cir. 1995); *United States v. Weitzenhoff*, 35 F.3d 1275, 1283 86 (9th Cir. 1993); *United States v. Frezzo Bros., Inc.*, 546 F. Supp. 713, 720 (E.D. Pa. 1982), *aff'd*, 703 F.2d 62 (3d Cir. 1983)).

[33] Docket 118 (Opp'n) at 7.

[34] *United States v. Weitzenhoff*, 35 F.3d 1275, 1284 (9th Cir. 1993).

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 9 of 12

those set in the permit" and "whether he knowingly made a false statement that there were no discharges in 2010 (Count Six) or conspired to violate the permit and make false statements (Count One)."[35] He adds that "he did not have the authority and control over the mine or its discharges that the Government suggests . . . . He also was not the person tasked with a variety of environmental compliance issues . . . ."[36] But Mr. Slade does not explain why pursuing these arguments requires him to present evidence as to whether he was aware of whether XSP was violating the CWA or the permit. The cases that he cites for the proposition that a non-permittee should be held to a different standard are inapposite. *United States v. Speach* considered a different statutory provision that made it unlawful to "knowingly transport[] or cause[] to be transported any hazardous waste identified or listed under this subchapter *to a facility which does not have a permit*."[37] Because that section "requires transporters . . . to ensure that *other* parties have storage permits," the Ninth Circuit "decline[d] to impose liability on these defendants absent proof that they knew the recipient's permit status."[38] Neither that statutory provision, nor the situation it addresses, is at issue here.

In *United States v. Cooper*, cited by Mr. Slade, the Ninth Circuit held that "the phrase 'any person' [in 33 U.S.C. § 1319(c)(2)] is broad enough to cover permittees and

---

[35] Docket 118 (Opp'n) at 8.

[36] Docket 118 (Opp'n) at 7.

[37] 968 F.2d 795, 796 (9th Cir. 1992) (emphasis added).

[38] 968 F.2d at 797 (emphasis added).

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 10 of 12

non-permittees alike."[39]  Here, the Complaint alleges that Mr. Slade was, *inter alia*, the Chief Operating Officer of XSP.[40]  The CWA provides that the term "person" as used in the relevant section includes "any responsible corporate officer."[41]  While Mr. Slade may dispute whether he was a "responsible corporate officer," he does not demonstrate why his knowledge of the law or permit conditions is relevant to that question. For these reasons, Mr. Slade's knowledge is not relevant to the conspiracy count.[42]

Mr. Slade's knowledge of the law or permit requirements is also not relevant to Count Six, which alleges that Mr. Slade, among others, violated the Clean Water Act when he "did state to the ADEC [Alaska Department of Environmental Conservation] in the 2010 Annual Report for placer mining at the Platinum Creek Mine that there was 'no discharge' during 2010, a statement the defendant[] knew to be false."[43]  Because the alleged statement does not refer to the law or the permit requirements, Mr. Slade's knowledge of those topics is not relevant to whether he made the statement at issue or knew it to be false.  Accordingly, the Government's motion in limine will be granted on this topic.

---

[39] 173 F.3d 1192 (9th Cir. 1999).  The *Cooper* court did not decide whether the Government was required to prove that a non-permittee defendant knew of the permit and its requirements.  *Id.* at 1201.

[40] Docket 17 (Superseding Indictment) at ¶ 11.

[41] 33 U.S.C. § 1319(c)(6).

[42] *See Ingram v. United States*, 360 U.S. 672, 678 (1959) ("There need not, of course, be proof that the conspirators were aware of the criminality of their objective . . . ."); *United States v. Grasso*, 724 F.3d 1077, 1086 (9th Cir. 2013) (same).

[43] Docket 17 (Superseding Indictment) at ¶ 53.

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 11 of 12

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1. Defendant James Slade's Motion in Limine to Exclude Evidence of Mr. Slade's Prior Uncharged Business Activities at Docket 93 is GRANTED as to any prior permit violations and as to Mr. Slade's prior business disputes. The motion is otherwise DENIED.

2. Defendant James Slade's Motion in Limine to Exclude Statements of Unavailable Codefendants and Alleged Co-Conspirators at Docket 94 is DENIED without prejudice to renew at trial outside the presence of the jury.

3. The Government's Motion in Limine to Exclude Evidence of an Absence of Environmental Harm, Jury Nullification, and Ignorance of the Law at Docket 109 is GRANTED to the extent that (a) both parties are precluded from introducing evidence or making arguments about pollutants other than turbidity or any effects that turbidity or any other pollutant might have on the environment; (b) Mr. Slade shall not argue that he should be acquitted even if the jury determines that he violated the law; and (c) evidence that Mr. Slade was ignorant of the law or did not know the requirements of the Clean Water Act permit is precluded. The motion is otherwise DENIED without prejudice to renew at trial outside the presence of the jury.

4. Either party may seek to revisit these rulings at trial, but shall do so by motion made outside the presence of the jury.

DATED this 10th day of July, 2015 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
United States District Judge

Case No. 3:14-cr-00103-05-SLG-DMS, *United States of America v. Slade*
Order re Motions in Limine
Page 12 of 12